UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Frank M. Peck,<br><br>    Plaintiff<br><br>    v.<br><br>E.K. McDaniel, et al.,<br><br>    Defendants | Case No.: 2:12-cv-01495-JAD-PAL<br><br>**Order and Judgment** |

This civil-rights action arises out of pro se prisoner Frank M. Peck's access-to-the-courts and retaliation allegations against officials in the Nevada Department of Corrections ("NDOC").[1] Defendants E.K. McDaniel, Brian Williams, Harold Wickham, Charlene Clarkson, and Rashonda Smith move for summary judgment.[2] Peck moves for a temporary restraining order and a preliminary injunction.[3] Having considered the record and law, I grant the motion for summary judgment in part, enter judgment in favor of the defendants on all remaining claims, and deny Peck's request for injunctive relief.

**Background**

Mr. Peck currently resides at Nevada's High Desert State Prison.[1] He alleges that his constitutional rights were violated at four NDOC prisons where he was incarcerated from June 2010

---

[1] *See* Doc. 14 (amended complaint).

[2] Doc. 101. I find the pending motions appropriate for resolution without oral argument. LR 78-2. Plaintiff was timely provided with the notice required under *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988). Doc. 102. I also liberally construe all of this pro se plaintiff's motions and pleadings. *See Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003).

[3] Docs. 106–07.

[1] Doc. 14 at 1. This background section draws on my order at Doc. 97.

to June 2012.² Three claims remain after screening. First, Peck contends he was denied access to the courts in pursuit of his habeas claims when Warden McDaniel "confiscated [his] 'reading glass,' [and] 'ink pen' upon arrival at Ely State Prison then denied [him] access to the Prison Law Library."³ Though he was provided "an ink pen the size of a Toothpick," his arthritis makes writing painful, particularly with a small pen.⁴ Peck claims that McDaniel denied him access to law clerks; that "random research materials" were provided "on purple paper with #6 font," which was "hardly discernable lacking in contrast"; and that McDaniel illegally confiscated all of Peck's legal documents "under the guise" of transferring Peck.⁵

Peck also asserts two retaliation claims against the five remaining defendants.⁶ He believes they seek to "intentionally chill and suppress Mr. Peck's will and ability to file Civil Rights complaints and habeas corpus post-conviction Actions, all while denying any and all access to the Prison Law Library or 'anyone adequately trained in the law.'"⁷ He alleges, *inter alia*, that the Nevada State Prison ("NSP") officials housed him with a known gang member "in an attempt to get Mr. Peck killed"; that NSP placed him in protective custody "in retaliation for expressing intentions of filing suit against NSP"; that he was routinely denied access to telephones, paperwork, and receipt of his own legal mail; that his prison grievances were routinely denied or lost; that Clarkson wrote him up for false charges of which he was eventually exonerated; and that he was denied communication with his attorney and DNA expert.⁸ As a result, Peck alleges, he was denied the

---

² Doc. 14 at 1. These institutions are Ely State Prison, Nevada State Prison, Southern Desert Correctional Center, and High Desert State Prison. Doc. 14 at 1. Nevada State Prison closed May 18, 2012.

³ Doc. 14 at 10–11; Doc. 17 at 8.

⁴ *See* Doc. 14 at 5.

⁵ Doc. 14 at 10.

⁶ Doc. 14 at 13–18.

⁷ Doc. 14 at 13, 15.

⁸ Doc. 14 at 13–17.

2

DNA evidence that "could have proven his innocence" and prevented him from spending 18 years in jail, and he argues that his pending litigation has suffered incalculable harm.[9]

## Discussion

### I. Defendants' Motion for Summary Judgment (Doc. 101)

The five defendants move together for summary judgment on Peck's claims. They argue that his claims have been mooted because the defendants are only sued in their official capacities, which limits Peck to injunctive relief as his sole remedy; that there is no evidence that Williams personally participated in any constitutional-rights violation; and that Peck cannot demonstrate he was denied access to the courts.[10] In his opposition, Peck argues that he sues the defendants in their individual capacities, and that discovery is still open and defendants have not provided enough discovery to permit the entry of summary judgment.[11]

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[12] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[13] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[14]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts

---

[9] Doc. 14 at 17; Doc. 104 at 12–13; *see also* Doc. 106 at 5.

[10] Doc. 101 at 5–12. Defendants also argue that Peck's claims are barred because he failed to exhaust his prison-grievance remedies. Because I grant the motion for summary judgment on other grounds, I need not—and do not—reach this additional argument.

[11] Doc. 104 at 2.

[12] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[13] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[14] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

3

showing that there is a genuine issue for trial."[15] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[16] The court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[17]

### A.   Defendants Are Sued in their Official Capacities, and Injunctive Relief—Now Moot— the Available Remedy for these Claims.

In an order dated February 21, 2014, I found that defendant Smith was sued in her official capacity only.[18] Defendants McDaniel, Williams, Clarkson, and Wickham now urge that they, too, are only sued in their official capacities.[19] Peck argues that all five defendants cannot have been sued only in their official capacities because his amended complaint specifies that they were sued in their individual capacities.[20] To support his argument, he cites pages "2A & 2B" of his complaint.[21]

#### *1.   Defendants are all sued in their official capacities only.*

An official-capacity suit against an official is a suit against the local government itself.[22] For a plaintiff to sue an official in his or her personal capacity, the complaint title must specify that the suit is against the person in a personal or individual capacity.[23] The Ninth Circuit wrote in

---

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[16] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[17] Fed. R. Civ. P. 56(c); *Orr*, 285 F.3d at 773–74.

[18] Doc. 97 at 7–9.

[19] Doc. 101 at 5.

[20] Doc. 104 at 2, 6.

[21] *Id.*

[22] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

[23] *Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho*, 42 F.3d 1278, 1285 (9th Cir. 1994).

4

*Shoshone-Bannock Tribes v. Fish & Game Commission* that "[w]here state officials are named in a complaint which seeks damages under 42 U.S.C. § 1983, it is presumed that the officials are being sued in their individual capacities."[24] This is the logical construction when damages require an individual-capacity lawsuit.[25] But the presumption can be overcome: when at least one official is expressly named in his individual capacity, "those officials as to whom the caption is silent could assume that they [are] *not* being sued in their individual capacities."[26]

The opening pages of Peck's complaint name seven defendants in their individual and official capacities.[27] Each of these defendants was dismissed in the screening order entered nearly two years ago.[28] The same screening order liberally construed Peck's complaint as suing the five defendants who remain in this case; these defendants were named in the caption but were omitted from that portion of the civil-rights complaint where Peck indicated whether he sued various defendants in their individual or official capacities.[29]

As *Shoshone-Bannock Tribes* teaches, the defendants as to whom Peck's caption is silent on the issue of official- or individual-capacity status can assume as a matter of law that they were only sued in their official capacities.[30] When Peck decided to specify that certain defendants were sued in their individual capacities, he was affirmatively choosing those defendants he designated for suit in their individual capacities. As master of his complaint, Peck created the situation in which he sued

---

[24] *Id.* (citing *Price v. Akaka,* 928 F.2d 824, 828 (9th Cir.1990)).

[25] *Id.* (citing *Price v. Akaka,* 928 F.2d 824, 828 (9th Cir.1990)) ("Any other construction would be illogical where the complaint is silent as to capacity, since a claim for damages against state officials in their official capacities is plainly barred.").

[26] *Id.* (citing *Sauceda v. Dep't of Labor & Indus.*, 917 F.2d 1216, 1218 (9th Cir. 1990) (emphasis in original). When this screening order was entered, now-Chief Judge Gloria Navarro was assigned to the case. *See* Doc. 17 (screening order); *see also* (Doc. 68 (reassigning case to the undersigned).

[27] Doc. 14 at 4–7.

[28] *See* Doc. 17 at 8 (screening order dated February 19, 2013).

[29] *See id.* at 3–8; *see also* Doc. 14 at 1–3.

[30] *See Shoshone-Bannock Tribes*, 42 F.3d at 1285 (citation omitted).

some defendants in their official capacities, some in official and individual capacities, and others in individual capacities alone.[31] And though I liberally read it for even possibly legitimate claims, the law does not permit me to wholly recast it. Accordingly, Peck's suit against the remaining defendants—McDaniel, Williams, Wickham, Clarkson, and Smith, only in their official capacities—is effectively a suit against the state itself. The only relief available to Peck against these defendants is the relief that would be available against the state of Nevada: injunctive relief.[32]

### *2.  Only injunctive relief is available against state officials sued in their official capacities.*

Official-capacity suits must be based on an official policy and custom that permits a plaintiff to obtain injunctive relief against a local government—and may sometimes permit a plaintiff to receive monetary relief that is "ancillary" to the injunction sought.[33] Peck prays for declaratory, injunctive, and compensatory relief; costs, fees, and attorneys' fees; any other appropriate relief; and "alternative means of word processing."[34] His complaint does not specify monetary amounts, nor is there any evidence that monetary relief is appropriate. Thus, the only remedy Peck can seek for his remaining claims is injunctive relief.

### *3.  Nearly all Peck's claims have been mooted by his transfer to another facility.*

Two theories survived the initial screening order in this case: denial of access to the courts and retaliation. In claim two, Peck alleges that McDaniel confiscated Peck's reading glasses and

---

[31] *Cf. Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987)) (internal quotation marks omitted) ("[S]ince the plaintiff is 'the master of the complaint,' the well-pleaded-complaint rule enables him, 'by eschewing claims based on federal law . . . to have the cause heard in state court.'").

[32] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").

[33] *Kentucky v. Graham*, 473 U.S. 159, 169 n.18 (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)); *L.A. Cnty. v. Humphries*, 131 S. Ct. 447, 453–54 (2010); *Hafer*, 502 U.S. at 25 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

[34] Doc. 14 at 2.

pens, denied him law-library access, and prevented law clerks from entering the segregation unit where Peck was housed at ESP.[35]  In claim four, he alleged that NSP and Southern Desert Correctional Center ("SDCC") staff intentionally placed Peck in a cell with a known gang member at SDCC in retaliation against Peck's expressed intention to sue NSP staff members, and that Williams and Smith denied him access to legal materials, telephone calls, and necessary paperwork and withheld time-sensitive legal documents and mail to chill his free-speech and court-access rights.[36]  In his fifth claim, Peck adds that Clarkson interfered with his legal mail and litigation and filed false charges against him.[37]  Peck also claims that, in retaliation for Peck's "many, many grievances," Wickham blocked Peck from calling an expert witness on the telephone with Peck's own funds, causing Peck's counsel to abandon his criminal appeal.[38]

Defendants argue that Peck's second and fourth claims are moot because Peck is no longer housed at ESP or SDCC and is instead housed at High Desert State Prison ("HDSP").[39]  Thus, they argue, injunctive relief is no longer available on his denial-of-access-to-the-courts and retaliation claims.[40]  They also argue that, because Clarkson is no longer an NDOC employee and because Wickham transferred to work at the Florence McClure Women's Correctional Center ("FMMCC"), any injunctive relief against these defendants "is not possible and is therefore[] moot."[41]  Peck does not address the mootness argument in his opposition, but in his requests for expanded library time, he alleges that he has experienced the same conduct from NDOC officials even at new institutions.

"A case, or an issue in a case, is considered moot 'if it has lost its character as a present, live

---

[35] Doc. 17 at 5.

[36] *Id.*; Doc. 14 at 13.

[37] Doc. 17 at 5.

[38] *Id.*

[39] Doc. 101 at 7.

[40] *See id.*

[41] *Id.*

controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.'"[42]   Demonstrating mootness "is a heavy burden of proof," but it can be done when (1) there is assurance of "no reasonable expectation" that the alleged violation happen again and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."[43]  In urging summary judgment, the defendants rely on five United States Supreme Court and Ninth Circuit cases in which prisoner-plaintiffs sought specific kinds of relief.[44]  In those cases, the courts found that the situations for which plaintiffs sought relief had abated and were highly unlikely to recur, thus mooting plaintiffs' claims.[45]  For example, in *Nelson v. Heiss*, the panel acknowledged, "It is true that when a prisoner is moved from a prison, his action will usually become moot as to conditions at that particular facility."[46]  But *Nelson* went on to distinguish mooted claims from conduct resulting from system-wide policies: it agreed that the plaintiff's injunctive-relief request was moot against certain officials, but noted that "he has also asserted a claim against Gomez, who was the Director of the Department of Corrections, and, as the complaint alleges, set policy for the whole California prison system."[47]  And the law compels district courts to address the possibility of continuing constitutional violations.

---

[42] *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 853–54 (9th Cir. 1985) (quoting *Connolly v. Pension Benefit Guar. Corp.*, 673 F.2d 1110, 1113 (9th Cir. 1982) (internal quotation marks omitted)).

[43] *Id.* at 854 (quoting *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)) (citing *United States v. W.T. Grant, Co.,* 345 U.S. 629, 633 (1953); *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1307–08 (9th Cir. 1982)) (internal quotation marks omitted).

[44] *See* Doc. 101 at 6.

[45] *See, e.g.*, *Preiser v. Newkirk*, 422 U.S. 395, 403 ("Any subjective fear Newkirk might entertain of being again transferred, under circumstances similar to those alleged in the complaint, or of suffering adverse consequences as a result of the 1972 transfer, is indeed remote and speculative and hardly casts that 'continuing and brooding presence.' over him"); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (citing *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986) ("Because he has demonstrated no reasonable expectation of returning to CBCC, his claims for injunctive relief relating to CBCC's policies are moot.").

[46] *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001) (citing *Dilley v. Gunn,* 64 F.3d 1365, 1368–69 (9th Cir. 1995)).

[47] *Id.* (citing Cal. Penal Code §§ 5053–5054).

To the extent Peck alleges acts of continuing retaliation and denial of access to the courts, a finding that his claims are mooted by a change in prison locations or prison personnel alone could "create a situation capable of repetition, yet making review difficult, if not defying review."[48] The pleadings and motions reflect that Peck has been housed in at least four prisons; he alleges he has experienced similar constitutional violations in multiple institutions.[49] It is well-established that prisoners have no right to be housed in any particular prison.[50] But state officials cannot avoid liability merely by pushing a prisoner to the next institution—and then the next—and thereby moot a claim for injunctive relief.

### a. Official-capacity claims against prison employees can be mooted by transfers and personnel changes.

Federal Rule of Civil Procedure 25(d) anticipates the effect of a change in public-officer-defendants' status during a pending action:

> An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

In 1974, the Supreme Court interpreted Rule 25 in two key decisions: *Spomer v. Littleton* and *Mayor*

---

[48] *DuPree v. United States*, 559 F.2d 1151, 1153 (9th Cir. 1977) (quoting *Moore v. Ogilvie*, 394 U.S. 814(1969); *Hall v. Beals*, 396 U.S. 45 (1969); *Roe v. Wade*, 410 U.S. 113 (1973)) (internal quotation marks omitted) (finding that a change in foreign consul did not moot a case).

[49] *See, e.g.*, Doc. 14 at 2–3 (naming defendants who worked at Ely State Prison, High Desert State Prison, Southern Desert Correctional Center, and the now-closed Nevada State Prison). Defendants also submit an Offender Movement History Report that purports to document Peck's many changes between Nevada prisons, but this document is unauthenticated by any affidavit or other supporting declaration. *See* Doc. 101-7. I therefore do not consider it for summary judgment purposes.

[50] *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State.").

9

*of the City of Philadelphia v. Educational Equality League*.[51] The *Spomer* court remanded a case in which the constitutional violation was "personal" to a departed official and there was no charge that the current administration "follow[ed] the intentional practices alleged," for a finding on whether injunctive relief was moot.[52] Two months later, the Supreme Court instructed in *Mayor*:

> Where there have been prior patterns of discrimination by the occupant of a state executive office but an intervening change in administration, the issuance of prospective coercive relief against the successor to the office must rest, at a minimum, on supplemental findings of fact indicating that the new officer will continue the practices of his predecessor.[53]

As the Supreme Court wrote in 1987, "The rules effectuating automatic substitution of public officers were specifically designed to prevent suits involving public officers from becoming moot due to personnel changes."[54] Under the *Spomer* line of cases, the question is thus whether the alleged violation is personal to the departed official or whether it reflects a continuing state practice.

In *Hoptowit v. Spellman*, the Ninth Circuit distinguished *Spomer* and *Mayor* because, in both earlier cases, the facts were "devoted exclusively to [a mayor's] personal appointment policies" and to a state's attorney's "racial discrimination."[55] In other words, the alleged wrongdoing was "personal to [the former officials]" in the Supreme Court decisions, but "most of the evidence [in

---

[51] *Spomer v. Littleton*, 414 U.S. 514 (1974); *Mayor of the City of Phila. v. Educ. Equal. League*, 415 U.S. 605 (1974). Although Rule 25(d) was amended since *Spomer* was decided, I rely upon cases interpreting the previous version of Rule 25(d) because no authority directs me to a new interpretation and because the old and new versions are substantially similar. *Compare* Fed. R. Civ. P. 25(d) *with* Fed. R. Civ. P. 25(d)(1) *and* Fed. R. Civ. P. 25(d)(1) advisory committee's note (observing that the "[p]resent Rule 25(d) is generally considered to be unsatisfactory.").

[52] *Spomer*, 414 U.S. at 521.

[53] *Philadelphia*, 415 U.S. at 622 (citing *Spomer v. Littleton*, 414 U.S. 514 (1974)).

[54] *Karcher v. May*, 484 U.S. 72, 83(1987) (citing Fed. R. Civ. P. 25(d)(1) advisory committee's note).

[55] *Hoptowit v. Spellman*, 753 F.2d 779, 782 (9th Cir. 1985) (quoting *Mayor of the City of Phila. v. Educ. Equal. League*, 415 U.S. 605 (1974)) (internal quotation marks omitted). *Hoptowit*, like *Spomer*, was decided under the earlier version of Rule 25(d)(1).

10

*Hoptowit* did] not relate to the personal conduct of the principal named defendants."[56] The circuit had affirmed "facts from which the continuation of the dispute [was] a reasonable inference and did not support "merely idiosyncratic abuses of the particular members of the outgoing administration."[57]

*Hoptowit* emphasized the Rule 25 advisory note, which observed that "[i]n general [the rule] will apply whenever effective relief would call for corrective behavior by the one then having official status and power, rather than the one who has lost that status and power through ceasing to hold office."[58] The *Hoptowit* record indicated ongoing Eighth Amendment violations because the prison was "old, dilapidated, and ill-maintained"[59] not due to personal conduct—such as a personal racist attitude—by any named official.[60] As a result, the Ninth Circuit concluded that the plaintiff's claims were not mooted merely because the named defendants were succeeded by other state officials, and the circuit rejected the state's argument that an injunction would require "supplemental findings of fact indicating that the new officer will continue the practices of his predecessor" under *Mayor*.[61]

Other circuits have similarly found that relief may be available under *Spomer* and *Mayor* even if a defendant is sued in his official capacity and subsequently vacates the office he held at the time of the suit.[62] The Second Circuit has stressed that, in considering an injunction against

---

[56] *Id.* (quoting *Spomer v. Littleton*, 414 U.S. 514 (1974)) (internal quotation marks omitted).

[57] *Id.* (quoting *Ciudadanos Unidos de San Juan v. Hidalgo Cnty. Grand Jury Comm'rs*, 622 F.2d 807, 822 (5th Cir. 1980); *Am. Civil Liberties Union of Miss., Inc. v. Finch*, 638 F.2d 1336, 1346–47 (1981)) (internal quotation marks omitted).

[58] *Id.* (quoting Fed. R. Civ. P. 25(d)(1) advisory committee's note).

[59] *Id.* at 783 (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1256 (9th Cir. 1982)).

[60] *See id.* at 782.

[61] *Id.* at 781–82 (quoting *Mayor of the City of Phila. v. Educ. Equal. League*, 415 U.S. 605, 622 (1974)).

[62] *See, e.g.*, *Sarteschi v. Burlein*, 508 F.2d 110, 114 (3d Cir. 1975) (citing *Mayor of the City of Phila. v. Educ. Equal. League*, 415 U.S. 605, 622–23 (1974); *Spomer v. Littleton*, 414 U.S. 514, 520–23 (1974)) ("While a substitution of successors in office is procedurally sound, to obtain injunctive relief against the successor there must be some indication that the successor would continue the unconstitutional practices alleged in the complaint."); *Ciudadanos Unidos De San Juan v. Hidalgo Cnty. Grand Jury Comm'rs*, 622 F.2d 807, 821 (5th Cir. 1980) (citing *Mayor of Phila. v. Educ.l Equality League*, 415 U.S. 605 (1974); *Network Project v. Corp. for Public Broadcasting*,

11

successors in office, "this is not a matter of jurisdiction or of liability, but rather exclusively one of remedy, and is consistent with general principles of prospective equitable relief."[63] And the Fifth Circuit has observed that "[s]ince a plaintiff would have to be exceptionally foresighted to put in his initial complaint specific allegations that any successor to the original official defendant will continue the challenged practice . . . courts should freely imply such an allegation where plaintiffs have supplied factual allegations from which the continuation of the dispute is a reasonable inference."[64]

I now consider whether Peck's claims have become are moot in light of these principles.

### b. Claim two: Peck's access-to-the-courts claim against McDaniel is partially moot, and the remainder is ripe for summary judgment.

Peck's second claim is for denial of access to the courts based on McDaniel's alleged confiscation Peck's reading glasses and pens, denial of law-library access, and prevention of law clerks from entering the segregation unit where Peck was housed at ESP.[65] Defendants argue that this claim is moot because Peck is no longer housed at ESP; he is now at HDSP.[66] As to Peck's

---

561 F.2d 963, 966–68 (D.C. Cir.1977); *Sarteschi v. Burlein*, 508 F.2d 110, 114 (3d Cir. 1975)) (describing *Spomer*'s concerns as "crystallized [by *Mayor*] into a simple principle: where the plaintiff claims prior patterns of discrimination by a government official, but there has been a change in the occupant of that office, the plaintiff must establish some basis to believe that the successor will continue the practices of his predecessor before the issuance of prospective coercive relief against the successor is warranted."); *Mumford*, 105 F.3d at 273 (quoting *Karcher v. May*, 484 U.S. 72, 83 (1987)) (writing that the purpose of automatic-substitution rules is to avoid mooting cases when personnel changes occur); *Tara Enters., Inc. v. Humble*, 622 F.2d 400, 401–02 (8th Cir. 1980) (citing *Mayor of the City of Phila. v. Educ. Equal. League*, 415 U.S. 605, 622–23 (1974); *Spomer v. Littleton*, 414 U.S. 514, 520–23 (1974)) ("The claim against the present City Attorney and Police Chief must also be dismissed. To obtain injunctive or declaratory relief against these officials, it is well established that there must be some indication that they intend to continue the unconstitutional practices alleged in the complaint.").

[63] *Arthur v. Nyquist*, 573 F.2d 134, 147 (2d Cir. 1978) (citing *Mayor of the City of Phila. v. Educ. Equal. League*, 415 U.S. 605, 621–22 (1974)).

[64] *Am. Civil Liberties Union of Miss., Inc. v. Finch*, 638 F.2d 1336, 1346 (1981)) (quoting *Ciudadanos Unidos de San Juan v. Hidalgo Cnty. Grand Jury Comm'rs*, 622 F.2d 807, 822 (5th Cir. 1980)).

[65] Doc. 17 at 5.

[66] Doc. 101 at 7.

12

reading glasses and as to the denial of law-clerk assistance, he never alleges that anyone else treated him in the same ways. Nothing in the record that even suggests these actions were part of a continuing course of conduct. Even assuming for discussion that these actions violated Peck's constitutional rights, they were personal to McDaniel's conduct. An injunction against the state would not give Peck actual relief. Under *Spomer* and *Mayor*, Peck's claims against McDaniel regarding reading glasses and law clerks have been mooted by his transfer, and I grant summary judgment on these aspects of claim two.

This leaves Peck's claim against McDaniel for denying law-library access. If Peck only alleged that he was denied law-library access at ESP, I would find this claim moot. But the record is replete with allegations that Peck is denied adequate access to the prison law library on an ongoing basis: he makes this claim against McDaniel in ESP, he makes it against law-library supervisor Anderson in his current motion for injunctive relief, he made it in his last motion for injunctive relief against law-library supervisor Dunn, and he makes it in five other motions for injunctive relief.[67] I find that this claim has not been mooted by Peck's relocation. It does fail as a matter of law, however, making summary judgment in defendants' favor appropriate.

In his seventh motion for injunctive relief, filed after the motion for summary judgment, Peck writes that he is "denied access to his (2) hours of computer access weekly by 50%."[68] Peck alleges that he was previously on the weekly Sunday and Wednesday call lists for library access, but after he filed a "grievance against law-library supervisor D. Anderson for maliciously shredding one of [his] legal documents," he was removed from the call list on two days over one week.[69] He requests "all available time even though inadequate" to access this library, indicating that even the maximum time allowed under the prison's policies will not satisfy him.[70]

---

[67] *See* Doc. 14 at 10; Doc 106 at 3; Doc. 66 at 4; *supra* n. 13.

[68] *Id.* at 2.

[69] *See id.* at 3. Anderson is not a defendant in this case. *See generally* Doc. 14.

[70] *See id.* at 5.

13

Prisoners have a "fundamental constitutional right of access to the courts [that] requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."[71] Courts apply "no established minimum requirement for satisfying the access requirement; rather, a reviewing court should focus on whether the individual plaintiff before it has been denied meaningful access."[72]  First, courts ask if the prisoner "alleges a denial of adequate law libraries *or* adequate assistance from persons trained in the law."[73]  Second, if neither of these core requirements established in the Supreme Court's *Bound v. Smith* decision is implicated, courts examine actual injury: whether the inmate was actually denied court access in a specific instance.[74]  Thus, "to state a claim for relief, [Peck] must establish either that: (1) he was denied access to an adequate law library or trained legal assistance; *or*, (2) he was actually denied access to the courts."[75]

The timing of when a state denies access to the court or law libraries also matters.  The Supreme Court wrote in *Smith v. Lewis* that "[t]he tools [*Bounds*] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."[76]  And as the defendants correctly argue, the Ninth Circuit has "conclude[d] the Supreme Court has

---

[71] *Bounds v. Smith*, 430 U.S. 817, 821, 825 (1977); *see also* Doc. 64 at 3 (writing that "the current law library at HSDP is unconstitutional under *Lewis v. Casey*, 518 U.S. 343 (1996).  *Bounds v. Smith*, 430 U.S. 817 (1977).").

[72] *Vandelft v. Moses*, 31 F.3d 794, 796 (9th Cir. 1994) (quoting *Sands v. Lewis,* 886 F.2d 1166, 1169 (9th Cir. 1989)) (internal quotation marks omitted).  Instead, this Circuit undertakes a two-step analysis.

[73] *Id.* (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)) (citing *Sands v. Lewis,* 886 F.2d 1166, 1169 (9th Cir. 1989)) (internal quotation marks omitted) (emphasis added in *Vandelft*).

[74] *Id.* (citation omitted).

[75] *Id.* (emphasis in original).

[76] *Smith v. Lewis*, 518 U.S. 343, 355 (1996) (emphasis in original) ("In other words, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.").

14

clearly stated that the constitutional right of access requires a state to provide a law library or legal assistance only during the pleading stage of a habeas or civil rights action."[77]

Peck is clearly beyond the pleading stage in this case, which has now proceeded to the summary-judgment phase. There is no evidence that he is unsuccessfully seeking to bring a new civil-rights or habeas action. On the contrary, the record reflects that Peck is capable of initiating multiple suits in the federal courts. As a matter of law, Peck is not being denied access to the courts. He has no right to law-library access for purposes of this litigation, and there is no indication that if Peck decides to bring another suit he will be denied some reasonable measure of law-library access to plead that case. Accordingly, I grant summary judgment in McDaniel's favor on this aspect of Peck's claim against him.[78]

        **c.**       ***Claim four: Peck's retaliation claim against Williams and Smith has been mooted.***

Peck's second surviving cause of action, claim four, is for retaliation. He alleges that NSP and SDCC staff intentionally placed him in a cell with a known gang member at SDCC in retaliation for Peck's expressed intention to sue NSP staff members.[79] In addition, his complaint alleges that Williams and Smith denied him access to legal materials, telephone calls, and necessary paperwork and withheld time-sensitive legal documents and mail to chill his right to free speech and to access the courts.[80] Nothing in the record indicates that these are ongoing behavioral patterns, that Peck has been subjected to similar treatment since leaving SDCC to be held at HDSP, or that the alleged

---

[77] Doc. 101 at 11; *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995) (discussing the Supreme Court's rulings in *Wolff v. McDonnell* and *Bounds v. Smith*).

[78] I do not consider the parties' administrative-exhaustion arguments because summary judgment is granted in full on other grounds.

[79] Doc. 17 at 5; Doc. 14 at 13. These factual allegations, liberally construed, include a potential claim for conspiracy under 42 U.S.C. § 1985. But Peck is now at an entirely different prison, there are no factual allegations that could support a claim of conspiracy with HDSP staff, and any relief he might receive is mooted. I therefore do not construe this as a separate potential claim against the defendants.

[80] Doc. 17 at 5.

15

misconduct reflects NDOC policies. Accordingly, I find that Peck's claim against Williams and Smith for retaliation is personal to these defendants and thus moot.[81] I grant summary judgment in defendants' favor on this count.

### d. Claim five: Peck's retaliation claim against Clarkson and Wickham is moot.

Peck's final claim, claim five, is for retaliation by Clarkson and Wickham. He alleges that Clarkson interfered with his legal mail and litigation and filed false charges.[82] He also argues that, in retaliation against Peck for filing grievances, Wickham blocked Peck from calling an expert witness on the telephone.[83] Peck believes that his counsel abandoned his criminal appeal as a result of Wickham's conduct.[84] Once again, the record lends no support to the idea that these alleged constitutional violations are ongoing. Indeed, the issue of false charges was resolved within the prison system, as Peck was found "not guilty" in an NDOC disciplinary proceeding, and the charges against him were dismissed.[85] On all the factual allegations that Peck raises in his fifth cause of action, the record indicates only conduct that is personal to Clarkson and Wickham. Because equitable relief is the only remedy available in this official-capacity suit, I find that relief would be moot on Peck's fifth claim. I thus grant summary judgment in Clarkson and Wickham's favor.

---

[81] Defendants also argue that Williams, who is sued in his official capacity as the SDCC warden, cannot be liable because there is no evidence that he personally participated in any constitutional violations against Peck. *See* Doc. 101 at 10–11. Under Section 1983, "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Nothing in the record indicates that Williams was personally involved in depriving Peck of constitutional rights. I therefore note that, even if the injunction that Peck seeks were not moot, I would be compelled to grant summary judgment in Williams's favor for lack of personal participation.

[82] Doc. 17 at 5.

[83] *Id.*

[84] *Id.*

[85] *See* Doc. 97 at 21 (citing Doc. 77 at 3; Doc. 66 at 3).

### B. No Discovery Issue Precludes Judgment.

Peck asserts one final argument in his opposition to the summary-judgment motion: the defendants' motion for summary judgment is premature because "discovery has NOT been completed."[86] The magistrate judge's scheduling order demonstrates otherwise. It contains a discovery cut-off date of December 26, 2013.[87] The defense filed this summary-judgment motion 68 days after that discovery cut-off date on March 4, 2014.[88] Moreover, although Rule 56(d) allows a party opposing summary judgment to raise the need for discovery as a barrier to summary adjudication, a Rule 56(d) request must be supported by affidavit or declaration.[89] Peck offers neither. Because discovery is closed, there are no discovery issues precluding judgment, the summary-judgment motion was appropriately brought, and Peck has not satisfied Rule 56(d), I find no reason to delay or deny summary judgment based on this argument.

## II. Peck's Request for Injunctive Relief (Docs. 106 and 107)

Peck has filed his seventh motion for injunctive relief, in which he once again seeks expanded law-library hours at the prison where he is held.[90] Because summary judgment has been

---

[86] Doc. 104 at 2 (emphasis in original).

[87] Doc. 87 at 2.

[88] *See* Doc. 101 (summary-judgment motions); *see also* Doc. 99 (order granting extension on summary-judgment deadline).

[89] Fed. R. Civ. P. 56(d). *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp.,* 525 F.3d 822, 827 (9th Cir. 2008) (quoting *Brae Transp., Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir.1986) ("Failure to comply with these requirements 'is a proper ground for denying discovery and proceeding to summary judgment.'").

[90] *Compare* Docs. 18–19 (emergency motion for temporary restraining order and preliminary injunction), Docs. 33–34 (motion for temporary restraining order and preliminary injunction), Docs. 50–51 (motion for temporary restraining order and preliminary injunction), Docs. 56–57 (emergency motion for temporary restraining order and preliminary injunction), Docs. 65–66 (motion for temporary restraining order and preliminary injunction), Doc. 64 (motion for reconsideration regarding temporary restraining order and preliminary injunction), Doc. 80 (motion for injunction), Doc. 49 (voluntarily dismissing Doc. 19 and refiling it as Doc. 44), *and* Docs. 106–07 (motion for temporary restraining order and preliminary injunction) *with* Doc. 22 (order denying Docs. 18–19), Doc. 39 (undeliverable mail returned to court from state prison as to Docs. 33–34), Doc. 58 (order denying Docs. 50–51), Doc. 62 (order denying Docs. 56–57), Doc. 67 (order denying Doc. 65 and permitting briefing on Doc. 66)*, and* Doc. 97 (omnibus order denying motions for preliminary

granted on all his pending claims, Peck cannot establish his likelihood of success on any pending claim, making injunctive relief unavailable.[91]  Accordingly, I deny Peck's motion for temporary restraining order and a preliminary injunction.

**Conclusion**

Accordingly, with good cause appearing and with no reason for delay,

It is HEREBY ORDERED, adjudged, and decreed that defendants' motion for summary judgment **[Doc. 101] is GRANTED in part and DENIED in part**.  Judgment is entered in favor of the defendants on all remaining claims.

It is further ORDERED that plaintiff's motion for temporary restraining order and preliminary injunction **[Docs. 106 and 107] is DENIED**.

The Clerk of Court is instructed to enter judgment and close this case.

DATED December 1, 2014.

_____
Jennifer A. Dorsey
United States District Judge

---

injunctions and reconsideration).

[91] *Global Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007) (quoting *Arcamuzi v. Cont'l Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir.1987)) ("A moving party must, at an 'irreducible minimum,' demonstrate some chance of success on the merits. When, as here, a party has not shown any chance of success on the merits, no further determination of irreparable harm or balancing of hardships is necessary.").